Marvin J. HERB, Petitioner,

v.

STATE BOARD OF TAX COMMISSIONERS, Respondent.

No. 45T10–9305–TA–00027.

Tax Court of Indiana.

Oct. 24, 1995.

Steven W. Handlon, Handlon & Handlon, Portage, for petitioner.

Pamela Carter, Attorney General, Ted J. Holaday, Deputy Attorney General, Indianapolis, for respondent.

FISHER, Judge.

The Petitioner, Marvin J. Herb (Herb), appeals a final determination of the Respondent, the State Board of Tax Commissioners (the State Board), valuing his Porter County property for the 1989 general reassessment.

## ISSUES

At trial, both Herb and the State Board stipulated that the following two issues were the only issues before this court:

I. Whether the 1989 general reassessment of Herb's property was void as a matter of law because it was not completed by March 1, 1989.

II. Whether the reassessment of Herb's property was arbitrary or discriminatory because the assessed value of Herb's building was based on its use, and not on its actual cost or value.

## FACTS AND PROCEDURAL HISTORY

Herb owns real property in Porter County, Indiana. On the property stands a building which is used as a Coca–Cola Bottling Company warehouse and distribution center.

For the 1989 general reassessment, Herb's building was classified as a "truck terminal" and assigned an assessed value of $988,070. Believing this figure to be too high, Herb filed a Form 130 Petition for Review of Assessment with the Porter County Board of Review on February 9, 1990. On July 17, 1990, the Porter County Board of Review reduced the assessed value of Herb's building to $686,770.

Still believing the assessed value to be too high, Herb filed a Form 131 Petition for Review of Assessment with the State Board on August 15, 1990. While the State Board conducted a hearing on Herb's petition on April 10, 1991, it did not issue a final determination by August of 1992. Consequently, Herb filed this original tax appeal on May 13, 1993. *See* IND. CODE 6–1.1–15–4(e).

On September 14, 1993, the State Board issued a final determination on Herb's Form 131 petition. In its final determination, the State Board changed the classification of Herb's building from "truck terminal" to "light warehouse," thus increasing the assessed value of Herb's building from $686,770 to $720,730. On October 19, 1993, Herb filed an amended complaint with the court. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ The State Board is accorded great deference when it acts within the scope of its authority. *Mahan v. State Bd. of Tax Comm'rs* (1993), Ind. Tax, 622 N.E.2d 1058, 1061. Accordingly, this court will not reverse a State Board final determination unless it is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds statutory authority, or is arbitrary and capricious. *Id.*

## DISCUSSION AND ANALYSIS

### I

Prior to being amended in 1989, IND. CODE 6–1.1–4–4 provided in pertinent part:

[a] general reassessment of the real property of all the counties of this state shall begin July 1, 1987, and each eighth year thereafter. Each reassessment shall be completed on or before March 1 of the immediately following odd-numbered year and shall be the basis for taxes payable in the year following the year in which the general assessment is to be completed.[1]

Herb argues that his property's reassessment was not completed by March 1, 1989, and is therefore null and void.

Specifically, Herb alleges that his property was not reassessed "until, *at the earliest,* October 19, 1989." *Petitioner's Brief in Support of Petitioner's Proposed Findings of Fact and Conclusions of Law* at 4 (emphasis in original). To support his allegation, Herb states that

[t]he Petitioner's [Form 131] Petition which the hearing officer accepted as evidence included statements of the following facts:

1. the Property was assessed on April 19, 1988;

2. between 1–1/2 and 1–3/4 years later (i.e., between October 19, 1989 and January 19, 1990), the Property was reassessed; and

3. the reassessment was not concluded between March 1, 1989 and March 1, 1989.[2]

*Petitioner's Brief in Support of Petitioner's Proposed Findings of Fact and Conclusions of Law* at 2 (footnote added).

As stated earlier, Herb filed his Form 131 petition, including attachments, with the State Board on August 15, 1990. Herb's attachments provide in relevant part:

The Petitioner's improvements were constructed in 1987. On April 19, 1988, these improvements were assessed at $368,010, resulting in an overall assessed valuation of the leasehold improvements of $403,380. The 1988 Notice of Addition to Assessed Valuation is attached as EXHIBIT A.

No improvements have been made by the Petitioner since the improvements made in 1987, referenced above. *Thus, the same improvements which were assessed at $368,010 on April 19, 1988 have been reassessed, after adjustment by the Porter County Board of Review, less than 1–3/4 years later, at $719,370—a 95% increase.*[3]

*Petitioner's Exhibit 1*, attachment at 1 (emphasis added) (footnote added). From this, Herb concludes:

The evidence which the hearing officer accepted, and which was also accepted into evidence by the Tax Court—[Herb's] petition for review to the [State] Board, with

---

1. This statute now reads: "[a] general reassessment ... shall begin July 1, 1993, and each fourth year thereafter ..." I.C. 6–1.1–4–4 (as amended by P.L. 332–1989, § 3).

2. The court believes Herb meant to say that the reassessment was not completed between July 1, 1987 and March 1, 1989. *See* I.C. 6–1.1–4–4 (prior to amendment by P.L. 332–1989, § 3).

3. These paragraphs are very confusing. In the first paragraph, Herb refers to the assessed value of the improvements as $368,010. Next, Herb states that the overall "assessed valuation of the leasehold improvements" is $403,380. Herb must mean to say that the overall assessed value

of the property is $403,380—$368,010 for improvements and $35,370 for land.

In the second paragraph, Herb states that the same improvements that were assessed at $368,010 in 1988 were assessed at $719,370 by the Porter County Board of Review less than 1–3/4 years later. Nevertheless, the record indicates that the Porter County Board of Review assessed the improvements at *$686,770.* Indeed, the $719,370 figure is the $686,770 value assigned to the improvements and the $32,600 assessed value assigned to the land combined. *See Petitioner's Exhibit 1.*

attachments—was undisputed. The property was not reassessed until, *at the earliest,* October 19, 1989.

*Petitioner's Brief in Support of Petitioner's Proposed Findings of Fact and Conclusions of Law* at 4.

 Like any other party appealing an administrative decision, Herb bears the burden of showing that the State Board's reassessment is inaccurate or void. *See Mahan,* 622 N.E.2d at 1064. While Herb argues that the reassessment is void because it was not completed by March 1, 1989, he offers no proof to substantiate his claim. Indeed, Herb's Form 131 and attachments offer only bare allegations that the reassessment was not completed by March 1, 1989. Furthermore, it is improper for Herb to assume that because the hearing officer accepted the Form 131 petition and attachments at the State Board hearing, the bare allegations contained therein are established as true. Allegations, unsupported by factual evidence, remain mere allegations.

Herb has not met his burden of proof. Indeed, Herb has not shown that his 1989 general reassessment was not completed by March 1, 1989. Consequently, there is no need for the court to address Herb's claim that the failure to complete a reassessment by March 1 voids the reassessment.

## II

Next, Herb asserts that the State Board's reassessment of his property was both arbitrary and discriminatory because it was based on the use of his building, and not on its actual cost or value. Herb contends that valuing a building based on its use violates the Indiana Constitution, as identical buildings may be assessed at different rates simply because they are used for different purposes. *Petitioner's Brief in Support of Petitioner's Proposed Findings of Fact and Conclusions of Law* at 7.

 The Indiana Constitution establishes that

[t]he General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valu-ation for taxation of all property, both real and personal.

IND.CONST. art X, § 1. In order to achieve a just and uniform valuation, different methods of assessment for different classes of property must be adopted. *Indiana State Bd. of Tax Comm'rs v. Lyon & Greenleaf Co., Inc.* (1977), 172 Ind.App. 272, 277, 359 N.E.2d 931, 934. Indeed, the constitutional requirement of uniform and equal taxation requires that assessments be consistent with similar property of the same classification. *Harrington v. State Bd. of Tax Comm'rs* (1988), Ind. Tax, 525 N.E.2d 360, 361 (citing IND.CONST. art X, § 1).

The State Board's regulations provide models to help identify and define various classes of buildings. *See* 50 I.A.C. 2.1–4–4; 2.1–4–7. Both the "truck terminal" and "light warehouse" models are contained within 50 I.A.C. 2.1–4–7(b), the "General Commercial Industrial Models." The distinctions between the two models include wall heights and the number of overhead door openings. *See* 50 I.A.C. 2.1–4–7(b); *Transcript* at 28. More specifically, a "light warehouse" has a wall height of eighteen feet and four percent (4%) of its openings are overhead doors. 50 I.A.C. 2.1–4–7(b). A "truck terminal," however, has a wall height of fourteen feet and thirty percent (30%) of its openings are overhead doors. 50 I.A.C. 2.1–4–7(b)

Thus, while the model names are reflective of use, the model specifications actually reflect the physical features that are incorporated into the structure. Indeed, both the State Board hearing officer assigned to this case, as well as State Board Commissioner Gordon McIntyre, testified at trial that the actual use of the property is not a determinative factor in selecting the appropriate model, but merely a starting point. As a result, the model that most closely resembles the subject improvement with respect to physical features is to be used, regardless of the model's name. *Transcript* at 33, 46–48, 54.

In the case at bar, the State Board's hearing officer testified that, after conducting a hearing on Herb's Form 131 petition, he inspected Herb's building. *Transcript* at 27. More specifically, the hearing officer said he inspected the building's wall heights and

overhead door openings, as well as how these components were incorporated into the building's total design. *Transcript* at 29–30. After doing so, the hearing officer determined that the building's physical features more closely resembled the "light warehouse" model than the "truck terminal" model. *Transcript* at 30. Accordingly, the hearing officer changed the classification of Herb's building from "truck terminal" to "light warehouse." *Transcript* at 27–30.

■ Once again, Herb has not met his burden of proof. First, he has not offered any evidence to show that the State Board's assessment was discriminatory, as a classification for taxation purposes is not invalid when it rests on a reasonable basis of actual difference between those included and those excluded. *Richmond Baking Co. v. Dep't of Treasury* (1939), 215 Ind. 110, 115, 18 N.E.2d 778, 781. Here, Herb's building was assessed based not on its use, but rather on its physical features. Consequently, an identical building, used in a manner different from that of Herb's, will be assessed under the model specifications on the basis of its identical physical features, and not on the basis of its different use.

■ Second, Herb has not offered any evidence to show that the State Board's assessment was arbitrary or incorrect. More specifically, Herb has not offered any evidence to show what particular pricing schedule applies to his building. Furthermore, because a building may not conform perfectly with model specifications, a hearing officer must use subjective judgment to decide which model the building most closely resembles. "As long as the State Board did 'not abuse its discretion in exercising its subjective judgment on a matter within the scope of its authority,' the court will not reverse the State Board's determination." *Mahan,* 622 N.E.2d at 1064. The State Board presented sufficient evidence to show there was no abuse of discretion in classifying Herb's building as a "light warehouse."[4]

## CONCLUSION

For the foregoing reasons, the court holds that the State Board's 1989 reassessment of Herb's property was neither void as a matter of law nor discriminatory and arbitrary. Accordingly, the State Board's final determination is AFFIRMED.

4. Herb has also argued to this court that because the State Board did not present any evidence at the administrative hearing, its decision to change the classification of Herb's building from "truck terminal" to "light warehouse" is inappropriate. More specifically, Herb argues that his due process rights were denied because he never had an opportunity to rebut the State Board's "subsequently obtained evidence" on which it relied to change the classification. The court disagrees.

"The State Board has plenary authority to review and correct any errors when a taxpayer brings an appeal before the State Board." *Wirth v. State Bd. of Tax Comm'rs* (1993), Ind. Tax, 613 N.E.2d 874, 879. Thus, the State Board was within its authority to inspect Herb's property after the administrative hearing and to make corrections in the building's classification if it deemed necessary. *See id.* Once it did, however, Herb had the right to rebut the State Board's determination and its supporting evidence. *See id.*

While it might be a better practice for the State Board to afford a taxpayer an opportunity to challenge a proposed determination when the hearing officer has inspected the property after a hearing, failure to so provide is not a denial of due process where such a challenge may be made to the court. *See id.* In the case at bar, Herb was given an opportunity in this court to show that the State Board's assessment was inaccurate. As stated above, however, Herb has made no evidentiary showing that his building was improperly assessed.